UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:25-cr-00008-GFVT-MAS-2 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| WILLIAM LEWIS BIRKLA, | ) | **& ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court on Defendant William Birkla's Motions for Discovery. [R. 53; R. 54; R. 55.]  Birkla has moved to compel the United States to produce information relating to the confidential informant in this case, as well as information relating to two potential government witnesses, one of whom is a co-defendant in this matter.  *Id.*  The United States responded, asserting that Birkla's motions should be denied because the United States is not required to produce this information until trial in this matter, pursuant to the Jencks Act.  [R. 64.] Having carefully considered the motions, the Court will **DENY** Birkla's Motions for Discovery [R. 53; R. 54; R. 55.] for the reasons set forth below.

**I**

The facts of this case are relatively straightforward.  Law enforcement observed Defendant Birkla with the two co-Defendants in this case, Arthur Widman and Michael Arro, at Cattleman's Roadhouse in Frankfort, Kentucky.  [R. 52.]  A woman by the name of Jennifer Howard was also present.  *Id.* at 2.  At the time, Defendant Widman was the target of a narcotics investigation which used a confidential informant, the identity of whom is not known to Birkla.

*Id.* The quartet left the restaurant in two separate vehicles, Howard and Widman in one vehicle, and Birkla and Arro in the other. *Id.* Following a traffic stop of the vehicle occupied by Birkla and Arro, Howard arrived at the scene and volunteered that the truck she was driving contained cocaine. [R. 63.] The four individuals were all arrested, and Widman, Birkla, and Arro were federally indicted on charges arising out of this conduct on July 17, 2025. [R. 1.] On October 27, 2025, Widman entered a plea of guilty before this Court, pursuant to a written plea agreement. [R. 46; R. 47.] The charges against Birkla and Arro remain pending.

Birkla faces charges of conspiracy to possess with the intent to distribute 500 grams or more of a mixture or substance containing cocaine, and aiding and abetting the same. [R. 57.] In his instant motions, Birkla first seeks the identity of the confidential informant, as well as all information concerning the confidential informant. [R. 53.] Birkla next seeks all information relating to Widman and Howard, including information about their status as confidential informants, cooperation with the government, plea negotiations, leniency promises, benefits, or consideration extended to them from any law-enforcement agency. [R. 54; R. 55.] Birkla asserts that his authority for these requests comes from the Due Process Clause of the Fifth Amendment, *Brady v. Maryland*, *Giglio v. United States*, *Napue v. Illinois*, *Roviaro v. United States*, *Davis v. Alaska,* and Federal Rules of Criminal Procedure 12(b)(3) and 16(a)(1)(E). [R. 53; R. 54; R. 55.] The United States contends that this information falls under the Jencks Act and thus does not need to be disclosed until trial. [R. 64.]

## II

### A

Rule 16 of the Federal Rules of Criminal Procedure governs discovery in criminal cases. As relevant here, it provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy. . . papers, document, [and] data. . .if the item is within the government's possession, custody, or control and:
>> (i) the item is material to preparing the defense
>> (ii) the government intends to use the item in its case-in-chief at trial; or
>> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).  Unlike the broad scope of civil discovery, "discovery afforded by Rule 16 is limited to the evidence referred to in its express provisions." *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988).  Indeed, "in most criminal prosecutions, the *Brady* rule, Rule 16, and the Jencks Act exhaust the universe of discovery to which the defendant is entitled." *Id.* at 1285 n. 12 (internal citations omitted).  Additionally, "there is no constitutional right to discovery in a criminal case." *Id.* at 1281 (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)).

To be discoverable under Rule 16, Birkla must make two showings with respect to each category of information he seeks. First, Birkla must show the information is "within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E).  Second, Birkla must demonstrate the materiality of that information.  *See United States v. Phillip*, 948 F.2d 241, 250 (6th Cir. 1991) ("A defendant does not satisfy [the materiality requirement] by means of conclusory arguments concerning materiality.").  Both showings are essential, for "the discovery afforded by Rule 16 is limited to evidence referred to in its express provisions." *See United States v. Warshak*, 631 F.3d 266, 327 (6th Cir. 2010) (quoting *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir.1988)).

The United States does not necessarily challenge either the possession, custody, or control or the materiality of the information.  [R. 64.]  Rather, the dispute essentially boils down to whether the United States is required to disclose the information prior to trial or whether it

3

may wait until trial to disclose the information sought. *Id.* at 3-4. In short, resolution of this motion hinges on whether the information sought is *Brady* material or Jencks Act material.

**B**

In *Brady v. Maryland*, the Court held that a prosecutor's suppression of evidence favorable to the defendant that is material to guilt or punishment violates the defendant's constitutional due process rights. 373 U.S. 83, 87 (1963). Relevant to the instant motion, the Sixth Circuit has held that *Brady* applies in the context of non-disclosure of evidence relating to the credibility of a witness whose reliability "may be determinative of guilt or innocence." *United States v. Kuehne*, 547 F.3d 667, 698 (6th Cir. 2008) (quoting *Giglio v. United States*, 405 U.S. 150, 153-54 (1972)). However, the Court has since held that *Brady* does not require the prosecution to reveal before trial the names of all witnesses who will testify unfavorably because "there is no constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

Additionally, "when *Brady* material sought by a defendant is covered by the Jencks Act" the terms of that Act govern the timing of the government's disclosure." *United States v. Brazil*, 395 Fed.Appx. 205, 215 (6th Cir. 2010) (internal citations omitted). Under the Jencks Act, "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C § 3500(a).

However, the Sixth Circuit has noted "[w]hile technically the government may withhold Jencks Act material until the conclusion of the direct examination of the witness, the better practice—and that followed in most federal courts today—is for the government to produce such

4

material well in advance of trial so that defense counsel may have an adequate opportunity to examine that which is not in dispute." *United States v. Minsky*, 963 F.2d 870, 876 (6th Cir. 1992).

The first category of information that Birkla seeks covers information related to the confidential informant in this matter, including "the identity and all information concerning the confidential informant." [R. 53 at 1.] Birkla asserts that the confidential informant's actions "may have induced, encouraged, or entrapped the alleged participants" and thus the confidential informant's identity "is essential to evaluate credibility, bias, and the defense of entrapment." *Id.* at 2. Birkla argues that this information constitutes *Brady* material, and thus a denial of discovery of this information amounts to a violation of Birkla's due process rights. *Id.* at 3-4. In response, the United States argues that the information sought by Birkla is not *Brady* material and instead constitutes *Jencks Act* material because it is information that goes to the credibility and truthfulness of the witnesses. [R. 64 at 2.] Thus, the United States asserts that it intends to comply with the applicable authority regarding disclosure of *Brady* and *Jencks Act* materials, including subjecting the confidential informant to cross examination at trial. *Id.* at 3.

Birkla next seeks information related to one of his co-defendants in this matter, Arthur Widman. [R. 54.] In the present matter, Widman has entered a plea of guilty, and Birkla believes Widman will be called to testify for the United States against Birkla. [R. 47; R. 54 at 2.] Birkla seeks information relating to Widman's prior or current cooperation agreements, plea negotiations, leniency promises, and any benefits or consideration extended to him by federal, state, or local law-enforcement agencies. [R. 54 at 1.] Birkla asserts that this information constitutes "material impeachment and exculpatory evidence" under *Brady* and *Giglio* and the defense cannot meaningfully cross-examine Widman or prepare motions without knowing the

extent of his prior informant work and consideration received.  *Id.* at 2-4.  The United States

believes that because this information pertains to witness credibility, it is *Jencks Act* material,

rather than *Brady* material, and thus does not need to be disclosed prior to trial.  [R. 64 at 2.]

Lastly, Birkla requests information related to Jennifer Howard, who was the fourth

individual arrested alongside Birkla, Widman, and Arro for the instant charged offense.  [R. 55.]

However, unlike Birkla, Widman, and Arro, Howard was not named in the federal indictment

and instead proceeded through Franklin District Court.  *Id.* at 2-3.  Birkla believes the United

States intends to use Howard as a cooperating witness at trial and seeks information regarding

Howard's confidential informant status, her state plea negotiations, any promises of leniency or

immunity, and any benefits received.  *Id.* at 3.  Birkla asserts that these materials are material

impeachment and exculpatory evidence under *Brady* and *Giglio* and thus must be disclosed.  *Id.*

The United States again believes that because this information pertains to witness credibility, it is

*Jencks Act* material, rather than *Brady* material, and therefore does not need to be disclosed prior

to trial. [R. 64 at 2.]

The Court finds that the Jencks Act covers all of the information requested by Birkla, and

thus the United States is under no obligation to produce this information until trial.  Starting with

the identity of the confidential informant, Birkla asserts that *Rovario v. United States* directs that

the identity of the confidential informant is "essential to a fair determination of the case."  353

U.S. 53, 60 (1957).  In *Rovario*, however, the confidential informant never testified at trial, and

as a result, the defendant never got the opportunity to develop a defense related to the

confidential informant.  *Id.* at 62.  By contrast, when a confidential informant testifies at trial, the

government is under no obligation to disclose their identity prior to trial because the defendant

will have the opportunity to cross-examine the informant and develop an entrapment related

defense.  *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993).  The United States asserts that it will "almost certainly" call the confidential informant in this case to testify at trial, and thus a long as the United States calls the confidential informant to testify, the United States does not have to disclose the identity of the informant or any information about them prior to calling them to testify at trial.

Regarding the information pertaining to both Widman and Howard, Birkla concedes that this information is "impeachment evidence" rather than exculpatory *Brady* evidence.  [R. 54 at 3.]  While Birkla is correct that both *Brady* and *Giglio* oblige the government to provide a defendant with evidence affecting the credibility of government witnesses, "[n]either case [] gives the defense a general right to pre-trial discovery" of impeachment evidence "where the prosecution denies that any such material is exculpatory and material under *Brady*."  *Presser*, 844 F.2d at 1283.  Further, "[i]f impeachment evidence is within the ambit of the Jencks Act, then the express provisions of the Jencks Act control discovery of that kind of evidence."  *Id.*  Here, the evidence pertaining to both Widman and Howard squarely falls within the confines of the Jencks Act.  The information sought pertains to both individuals' history of cooperation, and the benefits received for such cooperation, which Birkla intends to use to call into question the credibility and truthfulness of Widman and Howard.  Thus, the United States may not be compelled to disclose this information prior to trial.  18 U.S.C. § 3500(a)-(b).

Additionally, to comport with the purpose of criminal discovery rules—preserving the defendant's ability to defend himself at trial—the defendant may request a recess at trial to examine impeachment evidence and decide how to use it.  *Presser*, 844 F. 2d at 1283-84.  Further, while the Court cannot order the United States to produce the information requested by Birkla, the United States indicated that its customary practice is to provide the information prior

7

to the start of trial. [R. 64 at 2.]   In light of the foregoing, neither due process nor *Brady* entitle Birkla to discovery of information related to the confidential informant, Arthur Widman, or Jennifer Howard prior to trial.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant William Birkla's Motions for Discovery **[R. 53; R. 54; R. 55]** are **DENIED**.

This the 6th day of January, 2026.

Gregory F. Van Tatenhove
United States District Judge