UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:25-cr-00008-GFVT-MAS-2 |
| | ) | |
| V. | ) | |
| | ) | **OPINION** |
| WILLIAM LEWIS BIRKLA, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

William Lewis Birkla contends that officers did not have sufficient justification to conduct the traffic stop that led to his arrest, so he wants to suppress the evidence derived from that stop. [R. 87.] Of particular note, Birkla primarily seeks suppression of any evidence of his presence at the scene of the traffic stop. This poses an interesting question. Are identity and presence suppressible fruits? As explained below, the answer is "no," and because Birkla's Fourth Amendment rights were not otherwise infringed, the Court will **DENY** Defendant Birkla's Motion.

**I**

Prior to March 3, 2025, Defendant Birkla's co-Defendant, Arthur Widman, had been the target of a narcotics investigation which utilized a confidential informant. [R. 80 at 12-13.] Based on intelligence gathered from the confidential informant, law enforcement expected Widman to travel from out-of-state to Frankfort, Kentucky to complete a narcotics transaction. *Id.* at 13. According to the informant, on March 3, 2025, Widman called the informant and told him that he was in Frankfort. *Id.* The confidential informant made arrangements to purchase

two kilograms of cocaine from Widman in exchange for $56,000 on the evening of March 3, 2025. *Id.* at 14.

Helpfully, the confidential informant told law enforcement that when Widman traveled to Frankfort, he always stopped to dine at Cattleman's Roadhouse. *Id.* Based on that information, law enforcement conducted surveillance on Widman and were able to locate him at Cattleman's Roadhouse in Frankfort, Kentucky, along with the two co-Defendants in this action, William Birkla and Michael Arro. [R. 87 at 2.] A woman by the name of Jennifer Howard also accompanied them at the restaurant. *Id.* at 2. Law enforcement located Widman's vehicle, a Dodge Ram, in the parking lot of Cattleman's Roadhouse and noted that it sported an Illinois license plate. [R. 80 at 14.]

After some time, the quartet left the restaurant in two separate vehicles, Howard and Widman in one vehicle (the Dodge Ram), and Birkla and Arro in the other (a Buick Encore). *Id.* at 14-15. Law enforcement noticed that the Buick similarly sported an Illinois license plate. *Id.* at 15. Officers followed the Dodge Ram to the confidential informant's residence, approximately four miles away from the restaurant. *Id.* For the duration of the journey from Cattleman's Roadhouse to the informant's residence, law enforcement observed the Buick and Dodge driving in lockstep and even conducting the same lane changes as they travelled. *Id.*

Once in the vicinity of the informant's residence, the Dodge parked nearby, and Widman exited the vehicle to approach the informant's residence where officers believed he was waiting for the informant to return home. *Id.* at 16. Officers continued to observe the Buick and noted that the Buick circled the block at least two times before traveling to a gas station approximately a quarter of a mile away. *Id.* The Buick remained at the gas station for a few minutes with

neither Birkla nor Arro exiting the vehicle. *Id.* The Buick then headed back towards the informant's residence, passing the residence and circling the block once more. *Id.* at 17.

At the suppression hearing in this matter, the testifying officer, Detective Brown, stated that based on his training and experience, he believed the driving pattern of the Buick to be consistent with a "lookout" vehicle conducting countersurveillance, and he noted that sometimes lookout vehicles transport the narcotics in addition to counter-surveilling. *Id.* Operating under this belief, the officers conducted a traffic stop of the Buick. *Id.* at 17-18. Upon approaching the Buick, officers detected an odor of marijuana emanating from the vehicle. *Id.* at 18. Defendant Arro was operating the Buick at the time of the stop, and he admitted to officers that his vehicle contained marijuana. *Id.* Officers then removed Birkla and Arro from the vehicle and conducted a frisk of their persons, confiscating only their phones at that time. *Id.* at 23.

At some point during the traffic stop, Jennifer Howard drove the Dodge Ram towards the location of the Buick traffic stop, and upon her arrival at the scene, voluntarily told officers that the Dodge Ram contained narcotics. *Id.* at 20-21. Officers then searched the Dodge Ram, finding approximately two kilograms of cocaine therein. *Id.* at 21. In light of this discovery, officers then detained Widman and brought him to the scene of the traffic stop. *Id.* at 22. Officers read Widman his rights, and he indicated that he would like to speak to the officers. *Id.* He then told officers that Birkla was "on the hook" for the narcotics because they obtained the narcotics from one of Birkla's contacts. *Id.* at 22-23. Widman consented to a search of his cell phone which showed that Widman had been in regular contact with both Birkla and the informant. *Id.* at 23. Officers then arrested Widman, Howard, Birkla, and Arro and brought them into custody. *Id.* During a search at the police station, Birkla's wallet, along with $748 in cash, were removed from his person. *Id.* at 24.

Subsequently, on July 17, 2025, Defendants Widman, Birkla, and Arro were federally indicted on charges arising out of this conduct.  [R. 1.]  Birkla faced charges of conspiracy to possess with the intent to distribute 500 grams or more of a mixture or substance containing cocaine, and aiding and abetting the same.  [R. 57.]  On December 11, 2025, the grand jury returned a superseding indictment charging both Birkla and Arro with one count of knowingly and intentionally conspiring to distribute 500 grams or more of a mixture or substance containing cocaine, in violation of 21 U.S.C. § 846; one count of knowingly and intentionally attempting to distribute 500 grams or more of a mixture or substance containing cocaine, in violation of 21 U.S.C. § 846; and one count of aiding and abetting each other to knowingly and intentionally possess, with the intent to distribute, 500 grams or more of a mixture or substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1).  [R. 57.]

Defendant Birkla then brought the instant motion to suppress evidence of the $748 cash taken from his person, any officer observations of him at the scene, statements, photographs or video captured during the stop, and any testimony identifying him as present at the scene of the traffic stop.  [R. 87 at 6.]  Aside from the cash seized from Birkla's person, Birkla primarily wishes to proceed as if he were never in the company of Widman, Arro, or Howard at the scene of the traffic stop.  *See id.*  He contends that the officers lacked sufficient justification to conduct the traffic stop of the Buick, and thus all evidence obtained as a result of this stop must be suppressed.  *Id.*  The United States, on the other hand, contends that the officers had reasonable suspicion to conduct an investigatory stop of the Buick and a frisk of Birkla's person, as well as probable cause to arrest him.  [R. 97.]  The Court addresses these arguments in turn.

4

## II

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures, requiring a warrant based on probable cause, supported by oath, and particularly describing the place to be searched and the persons or things to be seized. U.S. Const. amend. IV.  Although the stop of a vehicle is considered a "seizure" under the Fourth Amendment, reasonableness does not require a warrant. *United States v. Brooks*, 987 F.3d 593, 598 (6th Cir. 2021).  Thus, a law enforcement officer may initiate a traffic stop when he "possesses either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012).

### A

The Court begins its analysis by discussing the proper exclusionary remedy in this matter. Although perhaps an unnatural place to start, Birkla requests a unique remedy: suppression of any evidence that he was on the scene of the traffic stop.  [R. 87 at 5.]  The only physical evidence that Birkla wishes to suppress is the $748 in cash located on his person following his arrest and transport to the police station.  *Id.*  Birkla contends that the evidence must be suppressed as "derivative evidence from the illegal stop and seizure."  *Id.*  But every violation of the Fourth Amendment does not result in suppression of evidence, so the Court finds it prudent to first analyze whether suppression would be warranted, even if Birkla's contentions are correct.

"[T]he exclusionary rule encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure' and, relevant here, 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. 232, 237 (2012) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984).  However, several

5

exceptions to the exclusionary rule render it inapplicable where its deterrence benefits do not outweigh its substantial social costs. *Hudson v. Michigan*, 547 U.S. 586, 591 (2006).

Assuming for the moment that the traffic stop was not sufficiently justified by either probable cause or reasonable suspicion, the officers did not find any physical evidence of any crime on Birkla's person for the duration of the stop. [R. 80 at 23.] Essentially, Birkla theorizes that if the Buick had not been stopped, then Jennifer Howard would not have driven the Dodge Ram to the scene and volunteered that there were drugs in the vehicle, which would not have led officers to detain Widman and bring him to the scene, where Widman volunteered that Birkla was the one "on the hook for the narcotics." *Id.* at 21-22. Thus, Birkla asks for suppression of (1) any officer observation of him at the scene, (2) any statements that he was on the scene, (3) any photographs or video capturing him on the scene, and (4) any testimony identifying him as present on the scene, which he contends constitutes derivative evidence of the unlawful traffic stop. [R. 87 at 5.]

Although neither party devoted any attention to the exclusionary implications of Birkla's request, the Supreme Court has held that although "the exclusionary sanction applies to any 'fruits' of a constitutional violation," a defendant "is not himself a suppressible 'fruit.'" *United States v. Crews*, 445 U.S. 463, 470 (1980). The Sixth Circuit has also confronted the issue of whether a defendant's identity may be suppressed if the defendant's identity was only learned because of a Fourth Amendment violation, holding that identity is not itself a suppressible fruit. *United States v. Navarro-Diaz*, 420 F.3d 581, 586 (6th Cir. 2005).

The Court recognizes that Birkla does not explicitly ask for his "identity" to be suppressed, but rather, asks for the fact that he was present at the scene of the traffic stop to be suppressed. [R. 87 at 5.] In this case, the distinction appears to be without a difference, and

6

Birkla has provided no authority that indicates that a Court may suppress the simple fact of a defendant's presence at a traffic stop.  At bottom, presence at the scene of the stop does not fall within primary or derivative evidence because it is an observable fact that is inseparable from identity.  *See e.g. United States v. Foppe*, 993 F.2d 1444, 1449 (9th Cir. 1993) (holding that observable facts, such as presence and appearance are not suppressible fruits).

As a practical consideration, the Court is unsure how this remedy would actually function.  Say the Court granted Birkla's requested relief, and this matter proceeded to trial.  The United States would be able to offer evidence that Birkla dined at Cattleman's Roadhouse with his co-Defendants, got in the passenger seat of the Buick with Arro at the helm, travelled in the Buick to the informant's residence, circled the block, and travelled to the gas station in the Buick.  None of these observations flow from any alleged Fourth Amendment violation.  However, once the traffic stop occurs, how is the United States to explain that Birkla is suddenly no longer present?  Would the United States be permitted to reference a faceless second character in the Buick and present on the scene, or would the witnesses be required to pretend that the passenger of the Buick vanished without a trace?  In considering how this would play out at trial, the absurdity of Birkla's request becomes apparent.  Nevertheless, the Court need not definitively determine whether Birkla's identity is subject to suppression because, as explained below, his Fourth Amendment rights were not violated.

**B**

As previously noted, a law enforcement officer may initiate a traffic stop when he "possesses either probable cause of a civil infraction or reasonable suspicion of criminal activity." *Lyons*, 687 F.3d at 763.  Reasonable suspicion is present when a police officer has "a particularized and objective basis for suspecting the particular person stopped of criminal

7

activity." *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). The officer must point to "specific and articulable facts" that are "more than an ill-defined hunch." *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004) (internal quotation marks omitted). However, reasonable suspicion requires "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Information relevant to the reasonable suspicion inquiry includes "the officer's own direct observations, dispatch information, directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred." *Campbell*, 549 F.3d at 371 (internal citations omitted).

Further, courts do not examine each factor leading to an officer's suspicions independently. Courts look at the totality of the circumstances: whether "the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior." *Campbell*, 549 F.3d at 371 (quoting *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006)). The Sixth Circuit has repeatedly affirmed findings of reasonable suspicion based on an aggregation of factors that, alone, would be insufficient. *See, e.g., United States v. Calvetti*, 836 F.3d 654, 667 (6th Cir. 2016) ("two strong indicators"—dubious travel plans and relevant criminal history—along with nervousness and inconsistent statements); *United States v. Paulette*, 457 F.3d 601 (6th Cir. 2006) (criminal history, suspicious hand movements, efforts to evade police, and presence in a high-crime area); *Winters*, 782 F.3d at 302 (nervousness, inconsistent travel plans, and an odd rental arrangement); *United States v. Campbell*, 511 F. App'x 424 (6th Cir. 2013) (visible nervousness, history of drug charges, and "an unusually strong smell of air freshener").

**1**

Under *Terry v. Ohio*, a seizure short of a full arrest may be justified by less than probable cause. 392 U.S. 1, 88 (1968). Instead, officers may conduct an investigatory seizure based on reasonable suspicion of criminal activity. *Id.* Birkla contends that the stop of the Buick cannot be characterized as a *Terry* stop because the officers approached the Buick with guns drawn, which Birkla refers to as a "felony stop" conducted with arrest-level force.[1] [R. 80 at 50.] The United States maintains that the traffic stop was a brief investigatory stop requiring only reasonable suspicion. *See id.* at 59-60.

While there is no bright line at which a seizure becomes an arrest, Courts have considered several factors relevant, including (1) the conduct of the police, (2) the characteristics of the particular defendant, and (3) the physical surroundings of the encounter. *United States v. Grant*, 920 F.2d 376, 382 (6th Cir. 1990). Many of the cases in which this issue arises concern the duration or extent of the restraint on the defendant's liberty. For example, in *United States v. Richardson¸* the Court found that the seizure amounted to an arrest when the defendant was placed in the back of a patrol car while officers searched his storage locker and truck. 949 F.2d 851, 857-58 (6th Cir. 1991). The Court emphasized the movement of the defendant from his car to another location constituted a significant restraint on his liberty. *Id.* Additionally, an officer may not extend a Terry stop "longer than is necessary to effectuate the purpose of the stop," or the stop may ripen into an arrest. *Florida v. Royer*, 460 U.S. 491, 500 (1983).

Neither concern is relevant here. First, once the officers confirmed that Birkla was unarmed, he was permitted to stand away from the Buick and was not handcuffed or otherwise

---

[1] At one point in the suppression hearing, Birkla conceded that "[h]ow they stopped him really is. . .irrelevant." [R. 80 at 53.] Although this may be construed as a withdrawal of his argument, in the interest of thoroughness, the Court addresses this issue.

restrained.  Thus, his liberty was not unduly restrained during the stop.  Additionally, Birkla does not contend that the duration of the stop amounted to an arrest.  Nor could he, because once Arro admitted to possessing marijuana in the Buick, this provided officers with probable cause to search the vehicle and thus secure the scene by briefly limiting both Birkla and Arro's movements.  *See United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004); *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997).  The time between the initial stop and Arro's admission was undisputedly brief, and thus, the only inquiry here is whether the use of force alone, namely the officers approaching the vehicle with guns drawn, converted the traffic stop into a *de facto* arrest.

To be clear, use of force may indeed ripen a *Terry* stop into an arrest.  *See United States v. Sharpe*, 470 U.S. 675, 685-86.  However, "when police officers reasonably fear that suspects are armed and dangerous, they may order the suspects out of a car and may draw their weapons when those steps are 'reasonably necessary for the protection of the officers.'"  *Houston v. Clark Cnty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 814-15 (6th Cir. 1999) (quoting *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993).  Notably, Birkla does not contend that the officers did not reasonably draw their weapons when approaching the vehicle; he only contends that in doing so, the stop became a *de facto* arrest.  [R. 80 at 50.]

Nevertheless, Detective Brown testified that in his experience, drug traffickers typically carry firearms to protect themselves and their narcotics.  *Id.* at 18-20.  Detective Brown specifically testified that the officers had knowledge that the instant transaction involved two kilograms of cocaine, which he described as a "significant amount" for the Frankfort area.  *Id.* at 19-20.  Thus, he noted that a drug trafficker carrying that amount of cocaine, would likely "not want to be robbed" and thus may be carrying a firearm for protection.  *Id.* at 20.  With these safety concerns in mind, the officers approached the Buick with guns drawn, but as soon as

10

Birkla and Arro were removed from the vehicle, and the officers dispelled their belief that Birkla and Arro may be armed, the officers placed their firearms back in their holsters. *Id.* at 45-46.

With that backdrop, the Court finds that the officers reasonably drew their weapons when conducting the stop of the Buick and did not conduct a "*de facto* arrest" of Birkla. The Supreme Court has held time and time again that the interest in officer safety is "both legitimate and weighty." *Wilson*, 519 U.S. at 412 (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977)). Specifically in the context of a traffic stop, the Supreme Court has noted that "danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car." *Wilson¸* 519 U.S. at 414. And in the context of narcotics transactions—which the officers reasonably believed Birkla to be involved in—a stop "may give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981). As such, the Court finds that the officers reasonably approached the Buick with weapons drawn and did not prolong that use of force such that the investigatory stop was converted into an arrest. Accordingly, the Court finds the reasonable suspicion standard applicable to the instant traffic stop.

**2**

The Court next addresses whether the traffic stop was justified by reasonable suspicion. In the context of a traffic stop, "an officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)). Although a less exacting standard than probable cause, reasonable suspicion "requires more than a mere hunch." *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir 2008). Rather, the officers must point to "specific and articulatable facts, which, taken together with rational

inferences from those facts, reasonably warrant" detaining the defendant. *United States v. Ellis*¸ 497 F.3d 606, 612-13.

Here, the officers based their suspicion of Birkla on the following facts: (1) the officers knew of Widman's prior drug trafficking conviction and plans to engage in a drug transaction on March 3, 2025; (2) Birkla and Arro were seen associating with Widman on March 3, 2025, and exited Cattleman's Roadhouse with Widman and Howard; (3) both vehicles had Illinois plates and traveled "in tandem" for over four miles, even completing the same lane changes before arriving at the informant's residence; (4) when Widman exited his vehicle to walk to the residence, the Buick slowed and then continued around the block, making several laps, but never straying far from the informant's residence; (5) the Buick made a brief stop at a gas station, but neither occupant exited the vehicle, at which point it traveled back toward the residence to continue making laps around the block; and (6) officers knew, from training and experience, that many drug dealers travel with a lookout vehicle. [*See* R. 80.]

Birkla contends that all of these facts are consistent with innocent behavior and cannot be aggregated into reasonable suspicion. [R. 87 at 3-4.] At bottom, Birkla contends that the officers found him and Arro "guilty by association" and piggybacked their suspicion of Birkla and Arro off of their suspicion of Widman. [R. 80 at 56-57.] Birkla attempts to point the Court's attention to facts which, in his opinion, demonstrate a lack of particularized suspicion. *Id*. Chiefly, Birkla contends that all of the above conduct is "innocent" and thus cannot be aggregated to rise to reasonable suspicion. *Id*.

However, Birkla's theory ignores the totality of the circumstances standard. While it may be true that these facts in isolation would not give rise to particularized suspicion, the Court must view these facts not in isolation, but in totality. *United States v. Smith*, 263 F.3d 571, 588

12

(6th Cir. 2001) ("[The Court] must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately.").  Sure, exiting a restaurant with a known drug trafficker, riding in a car with a license plate from the same state as said drug trafficker, or even traveling four miles on the same roadway as a drug trafficker may not alone serve as the basis for reasonable suspicion.  But in the instant matter, these facts did not occur in isolation, and the Court may not view them that way in determining whether the officers possessed reasonable suspicion.

Birkla also contends that because the officers did not have prior knowledge of either Birkla or Arro, the officers could not have reasonable suspicion to justify the traffic stop.  [R. 87 at 4.]  But the fact that officers may not have known exactly how the Buick was involved in the transaction does not make their inference, based on past experience, an unsupported "hunch."  The purpose of an investigatory stop is to make "reasonable inquiries" which either confirm or dispel the officer's reasonable suspicions.  *United States v. Butler*, 223 F.3d 368, 374 (6th Cir. 2000).  As such, courts "cannot reasonably demand scientific certainty. . .where none exists."  *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).  "Rather, they must permit officers to make 'commonsense judgments and inferences about human behavior.'"  *Kansas v. Glover*, 589 U.S. 376, 380-81 (2020) (quoting *Wardlow*, 528 U.S. at 125).  The objective and articulable facts set forth above supported the officers' belief that the Buick was either the lookout vehicle or the vehicle transporting the narcotics and gave rise to reasonable suspicion to conduct a traffic stop.  As such, no Fourth Amendment violation occurred when the officers conducted a traffic stop of the Buick.

## C

Having concluded that the officers had a proper basis to conduct a traffic stop, the Court next considers "whether the degree of intrusion. . .was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)). Birkla asserts that even if the traffic stop was valid, the subsequent detention and frisking of Birkla's person were not reasonable. [R. 87 at 4.]  Essentially, Birkla contends that the officers did not have reasonable suspicion of either him or Arro, but rather, based their suspicion of them off of the intelligence the officers had on Defendant Widman. *Id.*

At the outset, the Court notes that the officers did not seize any evidence from Birkla's person during this initial pat down. [R. 80 at 23.]  Rather, the cash and personal items identified in Birkla's motion were seized after Birkla's arrest, upon his arrival at the police department. *Id.* at 23-24.  Thus, with nothing to suppress, the Court does not need to address the constitutionality of the search. *See e.g., United States v. Slaten*, 5:11-cr-131-KKC, 2012 WL 2374241 (E.D. Ky. June 22, 2012) (denying motion to suppress as moot because the government did not seize or intend to introduce the challenged evidence).

Birkla also contends that he was unlawfully detained during the traffic stop, again asserting that the officers did not have any particularized suspicion of either him or Arro. [R. 87 at 4.]  As explained above, the officer had reasonable suspicion sufficient to justify the traffic stop.  Further, once the officers stopped the Buick and approached, they noticed an odor of marijuana emanating from the vehicle, and Arro admitted to possession of marijuana therein. [R. 80 at 29-20.]  The Sixth Circuit has repeatedly held that when an officer detects marijuana

14

emanating from a vehicle, this alone suffices to give the officer probable cause to search the vehicle. *See United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008) (noting that the Sixth Circuit has consistently held "the detection of a narcotic's odor, by itself is sufficient to establish probable cause to conduct a lawful search of the vehicle.")

Furthermore, during a traffic stop, "an officer may order passengers out of the vehicle pending the completion of the stop." *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016) (citing *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997)). Additionally, officers "do not need independent justification to remove the driver or passengers from the vehicle." *Id.* To that end, officers did not need any justification beyond the reasonable suspicion that justified the initial stop to briefly detain Arro and Birkla while conducting the search of the vehicle. As such, the Court finds that no Fourth Amendment violation occurred, and in any event, no evidence was recovered during the stop.

**D**

Finally, Birkla argues that his arrest lacked probable cause. [R. 87 at 5.] "A warrantless arrest by a law officer is reasonable under the Fourth Amendment where the arrest is in public and there is probable cause to believe that a criminal offense has been or is being committed." *United States v. Abdi*, 463 F.3d 547, 557 (6th Cir. 2006). Probable cause "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). It requires an assessment of the events leading to an arrest, and from that perspective, the Court asks "whether an objectively reasonable officer would conclude that there is a 'probability or substantial chance of criminal activity.'" *Fisher v. Jordan*, 91 F.4th 419, 425 (6th Cir. 2024) (quoting *Wesby*, 583 U.S. at 57). Probable cause "requires more than a reasonable suspicion but less than a preponderance of the

15

evidence—and far less than guilt beyond a reasonable doubt." *Fisher*, 91 F.4th at 425 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Birkla contends that officers had no evidence that Birkla had committed any crime because no drugs were found on him, no money exchanges were observed, and no surveillance was conducted, among other things. [R. 87 at 5.]  Birkla asserts that officers arrested him based on his "mere presence in the Buick and a small amount of cash" which he contends is insufficient to rise to probable cause. *Id.*  However, the record indicates otherwise.

Looking to the facts known to the officers prior to the arrest, in addition to the facts that justified the traffic stop of the Buick, the officers also had statements from Howard and Widman implicating Birkla, as well as text messages between Birkla and Widman.  [R. 80 at 20-22.] After Howard drove the Dodge to the scene of the traffic stop on her own accord and volunteered that the vehicle contained narcotics, the officers retrieved Widman from the CI's residence. *Id.* Upon Widman's arrival at the scene, officers read him his rights, and he indicated that he wanted to speak to the officers. *Id.* at 22.  Widman then told officers that Birkla had set up the meeting to obtain the narcotics recovered at the scene, and that Widman and Birkla had both visited Birkla's contact on the morning of March 3 prior to driving to Frankfort. *Id.* at 22-23.  Widman gave the officers consent to search his phone, and the testifying officer noted that Widman's phone history indicated that he had been in regular contact with Birkla in preparation for the narcotics transaction and otherwise generally corroborated Widman's story. *Id.* at 23.

The above facts, coupled with the facts that justified the traffic stop of the Buick, are more than sufficient to justify Birkla's arrest.  First, the officers already possessed reasonable suspicion that Birkla was involved in the narcotics transaction based on his association with Widman immediately prior to and during the timeframe that Widman officers knew, based on a

reliable confidential informant, that Widman would be conducting a narcotics transaction. Birkla's involvement in the transaction was further bolstered by the fact that when Birkla and Arro were stopped by officers, they were unable to provide an explanation for their presence in the area.

Next, Howard's arrival on the scene with the narcotics certainly tends to implicate Birkla and Arro. The officers, using their commonsense judgment, could have reasonably taken Howard's arrival to indicate that once Birkla and Arro had been stopped by the officers, Howard assumed that her and Widman had been caught as well, further supporting the officer's suspicion that the four were working in concert. And finally, the statements and phone history from Widman gave the officers further cause to justify Birkla's arrest.

In sum, officers performed a lawful investigatory stop on Mr. Birkla, sufficiently justified by articulable facts. They then legally frisked his person by performing a precautionary search. Further, the subsequent arrest of Birkla was sufficiently justified by probable cause. Because none of the events of March 3, 2025, violated the Fourth Amendment, there is no fruit of the poisonous tree analysis for the Court to apply. The evidence seized falls squarely within existing exceptions to the Fourth Amendment's warrant requirements.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Birkla's Motion to Suppress **[R. 87]** is **DENIED**.

17

This the 15th day of June, 2026.

Gregory F. Van Tatenhove
United States District Judge